## CIRCUIT COURT OF THE CITY OF RICHMOND

Jeffrey Erickson

v.

City of Richmond School Board et al.

July 31, 1987

Case No. N 1301-6

By JUDGE ROBERT L. HARRIS, SR.

This case concerns the appropriateness of the program developed by the City of Richmond School Board for the education of Jeffrey Erickson, a handicapped young man of average to above average mental ability. The mandates of federal and state law are applicable. Jeffrey, by his parents, has filed suit in this court to appeal the decision of a state reviewing officer that the School Board could and did provide him a free appropriate public education, in accordance with federal and state law.

Jurisdiction is derived from the Code of Virginia, Section 22.1-214(D), which provides that parties aggrieved by due process procedures prescribed by the Board of Education and final decisions by hearing officers may bring a civil action in the circuit court for the jurisdiction in which the school division is located. The Code of Virginia further provides that:

> In any such action the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate.

The School Board is obligated to educate handicapped children in accordance with the Education for All Handicapped Children Act, 20 U.S.C. Sections 1400-1420 (1982), and the Virginia statute prescribing special education, Code of Virginia, Sections 22.1-213 to -221 (1985).

The Virginia statute defines "special education" as instruction "to meet the reasonable educational needs of handicapped children, transportation, and related services required or appropriate to assist handicapped children in taking advantage of, or responding to, educational programs and opportunities commensurate with their abilities." Va. Code § 22.1-213.2.

The federal and state statutes require that the School Board, with the parents, prepare an Individualized Educational Program (IEP) showing, for the child, present levels of educational performance, annual goals, short-term instructional objectives, specific educational services to be provided, and the extent of the child's participation in the "mainstream" or regular educational program. 20 U.S.C. § 1401(19). In addition, the dates covered by the program, and evaluation criteria and procedures are required.

One of the concerns of both the federal and state statutes is bringing the handicapped child into the least restrictive environment. This concern is expressed in the federal requirement that "special classes, separate schooling, or other removal of handicapped children occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily . . . ." 20 U.S.C. § 1412(5)(B).

Jeffrey Erickson attended Richmond public schools from kindergarten in September, 1976, through the sixth grade, ending June, 1983. When he reached the third grade, the school system placed him in a self-contained special education program designed for students identified as learning disabled. This educational program was continued in his fourth and fifth grades. For the sixth grade, Jeffrey's educational program was carried out in a modified self-contained learning disabilities classroom. During that year, he was in regular education classes for science,

vocational education, and physical education. He earned three A's and three B's in the sixth grade.

It is not disputed that the parents approved the individualized educational programs developed for Jeffrey during the third through the sixth grades. The objectives set by those programs were surpassed each year. In March, 1983, the spring of Jeffrey's sixth grade year, his parents advised the school system they were placing him in the New Community School, a private school designed for children with college potential whose learning disabilities handicapped their aspirations. The parents requested, and were denied, tuition assistance.

The parents placed Jeffrey in the private school in September, 1983, beginning the seventh grade. He is now in the tenth grade. He makes satisfactory progress in his school work, but continues to show lack of proficiency in his area of disability, written language skills, because of his handicap, diagnosed from the beginning as dyslexia.

The process of denying the parents' request for tuition assistance involved, first, determining in a triennial evaluation that Jeffrey was eligible for continued special education services as a learning disabled student, and second, establishing that the school system could continue to meet his educational needs within its available programs, as developed for Jeffrey.

A hearing officer appointed to hear testimony in a due process hearing requested by the parents in November, 1983, concluded that tuition assistance should be denied. His finding was based on testimony at the hearing, and an independent educational evaluation. The evaluation confirmed the school system's assessment of Jeffrey's capabilities and handicaps, and recommended he be placed in a regular seventh grade program, adapted to his weakness in written language resulting from slow perception.

The parents appealed the hearing officer's decision to a state reviewing officer, who affirmed the local hearing officer's findings that the school system had made a free appropriate public education for Jeffrey as a handicapped student, and that withholding tuition assistance was appropriate. The reviewing officer found that the "various scores and levels of achievement of Jeffrey show a student who is handicapped but one who

is making reasonable and satisfactory progress based on the [individualized educational programs] established by the [school system] and concurred in and consented to by the parents of Jeffrey."

Jeffrey sued by his parents in this court to appeal the decision of the hearing officers. A hearing was held in March, 1987, to take additional evidence, at which the administrative record was introduced, and testimony was taken from the head of the New Community School, Jeffrey, and a program specialist for the school system program for learning disabled students. The testimony of the adult witnesses did not add significantly to the record. Documents presented the most recent educational evaluations prepared on Jeffrey, his individualized educational program for 1986-1987, and reports of teachers and specialists. The difficulties the student has remain, with performance in written language skills slightly more than four years below his ninth grade level. (Tanner, Psychological Report.) Progress during the two-year period preceding the reevaluation of the independent evaluation made for the due process hearing showed grade level improvements of more than five grade levels in reading and mathematics, three grade levels in written language, and two grade levels in knowledge (Ipsen, Education Re-Evaluation). Of course, we should expect at least two grade levels of improvement in the two-year period.

At the March hearing, Jeffrey was articulate and persuasive in his testimony. He understood the mechanism of his handicap, and the theory underlying the remedial measures included in his educational program. He commented on his last year in public school:

> It was hard to get things done there. There was [sic] a lot of disturbances, a lot more than I see at the school I'm at now. T-P83
>
> I don't think I liked school there that year [the last year he was in public school.] When I was in the lower grades first through fifth I think I really liked school a lot. I think I have always tried to be an achiever, but there was a lot harder. There were not as many programs to help me, but I think I did what I could to like school. T-P88

Following the hearing by this court, both parties submitted post-trial memoranda, and plaintiffs submitted a rebuttal memorandum. Counsel appeared to present oral arguments on their memoranda, and specifically addressed in written memoranda whether or not Virginia has a higher standard than the federal requirement for educating handicapped students.

The plaintiffs contend that in order to meet the needs of students for programs "commensurate with their abilities" (Va. Code § 22.1-213.2), the school system must provide Jeffrey, because he is above average, with above average access to educational benefits. The defendants point out that there is no federal requirement to maximize educational opportunities for a handicapped student. *Board of Education v. Rowley*, 458 U.S. 176, 200 (1982) (Defendants' Post-Trial Memorandum at 6). Further, the defendants find in the cited statute a standard requiring a program that meets "the reasonable educational needs of handicapped children." (Va. Code § 22.1-213.2.)

I am asked to decide whether or not the school system was providing Jeffrey a free appropriate public education at the time his parents removed him from the public school and placed him in a private school for learning disabled students. In reaching my decision, I am guided by the decision in *Rowley* and the relevant federal and Virginia statutes.

The individualized educational programs prepared for Jeffrey by the school system and his parents for grades three through seven are part of the record. My review of them finds no feature requiring exception, nor has either party presented evidence or argument to raise objections to the programs. If the plaintiff Jeffrey could have shown where his programs were deficient, not in conformance with statutory or professional standards, or unrelated to the actual educational regimen he received, then I would have some basis for questioning whether or not these programs were sufficient. In fact, Jeffrey's counsel insisted that the programs were proper, but relied upon the disheartening *results* of Jeffrey's remedial education to argue that a deficiency in the programs existed. I am not able to accept such circumstantial reasoning.

If the programs for Jeffrey's third, fourth, fifth, and sixth grades are deficient, wholly or partially, then Jeffrey should be able to show me where and how the school system failed in its duty to provide him a free appropriate public education, by reference to deficiencies in his progress. The school system argued that Jeffrey passed to the next grade each year from the third grade on, maintaining good grades. (In the sixth grade Jeffrey earned three A's and three B's, participated in the Science Fair, was elected a student government representative, was on the honor roll, and won first place in a forensics competition.) In response Jeffrey pointed to his continuing disability, and modest improvement in written language skills, during his attendance in the public school system.

Jeffrey relies on the phrase "commensurate with their [the children's] abilities" in the Virginia statute to conclude that "a student with above average intelligence requires more and better services," than, I assume, a less intelligent handicapped student requires. I am not persuaded by such a statement. I find no language in either the federal or Virginia statutes reflecting such a requirement. Likewise, examining the cases brought to my attention by counsel, and my own research, I find no support for the plaintiff's conclusion.

In *Rowley*, the plaintiff handicapped child was denied additional assistance because if the school provides "sufficient support services to permit the child to benefit from the instruction, and the other items in the definitional checklist [for 'free appropriate public education'] are satisfied," the federal statute is satisfied. *Rowley* at 189. Specifically lacking in the federal law is a requirement for maximizing "the potential of the handicapped children 'commensurate with the opportunity provided to other children'." *Rowley* at 189-190.

In *Martin v. School Board*, 3 Va. App. 197 (1986), the Court of Appeals assumed that the Virginia statute requires no more than the federal statute. The test applied in *Martin* to determine "sufficiency of educational benefit" begins "with particular concern for the unique needs of the handicapped child." *Martin* at 206. After reviewing the evidence, the court concluded that the child had made significant progress in his program, and "more important," could not find that the proposed alternative (a

full-time residential program) was the only educational placement "reasonably calculated to enable [the child] to receive educational benefits." Although the parents' desired placement might provide greater benefit, the fact that the child made significant progress in a less restrictive environment was sufficient to find that the school board met its statutory obligations under the federal and state laws. *Martin* at 210.

Here Jeffrey argues that his performance in the private school justifies the conclusion that placement there, rather than in the public schools, is appropriate. He points to the five years' improvement in two years' time in reading and mathematics, three years' improvement in written language, and two years' improvement in knowledge as proof of the inappropriateness of the free public education available in the public system. I am not persuaded by this approach.

It is clear that Jeffrey can profit from intensive learning experiences; it is to his credit that he has the drive and ambition to succeed in the face of his handicap. But his success does not show that the school system failed, absent a clear showing of deficiencies in the substance of the free public education given Jeffrey, and offered to him following the sixth grade.

The findings of the local hearing officer and state reviewing officer are affirmed.